IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSIE GARRIT, as administrator of the estate of Darius Cole-Garrit; UNIQUE HATCHET, on behalf of her minor child; DOMONEEC HARRIS, on behalf of her minor child; and FALICIA LEWIS, on behalf of her minor child, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16 C 7319 |
| v. | ) ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, an Illinois Municipal Corporation; Officer MATTHEW O'BRIEN, #10634; Officer JAMES BANSLEY, #10927; Officer RONNY STURM, #11012; Officer KYLE BURG, #7762, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Susie Garrit, as administrator of the estate of Darius Cole-Garrit, Unique Hatchet, on behalf of her minor child, Domoneec Harris, on behalf of her minor child, and Falicia Lewis, on behalf of her minor child, have brought a five count amended complaint against defendants City of Chicago and Chicago Police Officers Matthew O'Brien, James Bansley, Ronny Sturm and Kyle Burg, alleging excessive use of force against O'Brien and Bansley (Count I); conspiracy against O'Brien and Bansley (Count II); failure to intervene against Burg and Sturm (Count III); municipal liability against the City (Count IV) and loss of consortium against all defendants (Count V). In a single motion, defendants Burg and Sturm have moved for summary judgment on the two counts brought against them (Count II – failure to intervene, and Count V – loss of consortium), and defendants O'Brien and Bansley have moved

for summary judgment on Count II (conspiracy). For the reasons described below, the motion is granted.

## BACKGROUND[1]

Sometime during the evening on August 14, 2014, Darius Cole-Garrit, who was originally from Chicago but had moved to Minnesota, was playing basketball at Golden Gate Park in Chicago. A Chevrolet Tahoe drove onto the basketball court. According to witnesses, the Tahoe had four Chicago police officers in it. One witness heard one of the officers threaten Cole-Garrit saying "we got your ass," or something similar. Plaintiff Falicia Lewis claims to have received a call from Cole-Garrit after the incident, in which he told her that the police had threatened him.

Defendants were patrolling that area in a Chevrolet Tahoe, but deny or do not recall driving onto the basketball court. O'Brien was driving, Bansley was in the front passenger seat. Rookie officers Sturm and Burg were in the backseats. At approximately 9:30 p.m. the officers saw Cole-Garrit at the intersection of Forestview and 133rd Street. Cole-Garrit was riding or straddling a bicycle. The officers shined a spot light on him, and all four officers testified that they saw Cole-Garrit point a handgun at them. Prior to seeing the gun, the officers did not suspect Cole-Garrit of committing a crime.

All four officers jumped out of the car to chase Cole-Garrit. Burg testified that when they jumped out the car was still moving, so he ran with the vehicle until he could jump in and put the car in park. He heard gun shots as he was attempting to enter the vehicle, approximately one to two seconds after he initially exited. He did not know where the shots came from but

---

[1] The background facts are taken from the parties' L.R. 56.1 statements.

testified that he thought the officers were being shot at. Once he got the car in park, he saw the other officers moving toward Cole-Garrit, who was unresponsive on the ground. The only statement he heard during the whole incident was "gun" and "drop the gun." Burg did not fire his weapon.

Sturm testified that when he got out of the car O'Brien was already running toward Cole-Garrit. O'Brien was about five feet away in front of Sturm. Sturm testified that he saw Cole-Garrit raise a gun and point it in the officers' direction. Sturm then came to a complete stop and pointed his weapon, but did not fire because O'Brien had stepped directly in front of him. O'Brien began firing his weapon. Sturm could not see Cole-Garrit at that point. The shots came in rapid succession with no break in between. Sturm did not know where Cole-Garrit's gun was. Sturm did not see Bansley or Burg and did not know where they were.

Bansley began firing at Cole-Garrit almost immediately after O'Brien began firing. O'Brien heard other gun shots. Bansley fired five shots and O'Brien fired eleven. Neither Sturm nor Burg fired their weapons. The officers recovered a gun approximately ten to fifteen feet from Cole-Garrit. There were no finger prints or DNA tying the gun to Cole-Garrit, but it appears to be undisputed that earlier in the day Cole-Garrit had posted a picture of himself on Facebook in which he had a similar looking gun.

## **DISCUSSION**

Defendants have moved for summary judgment on Counts II, III, and V. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(s); Celotex v. Catrett, 477 U.S. 317, 322 (1986). A moving party can prevail on summary judgment by either

pointing to undisputed facts supported by the record that demonstrate that it is entitled to judgment, or it can point to an absence of evidence of an essential element of the responding party's claim or affirmative defense. Id. Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (1990). The court does not weigh conflicting evidence or make credibility determinations, but considers the evidence as a whole and draws all inferences in the light most favorable to the nonmoving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (186). The nonmoving party, must, however, do more than simply "show there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving] party." Anderson, 477 U.S. at 252; see Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2003) (The court must enter summary judgment against a party that "does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question.")).

In Count III, plaintiffs allege that Sturm and Burg failed to take reasonable steps to prevent O'Brien and Bansley from shooting Cole-Garrit. A police officer who is present and fails to intervene to prevent other officers from infringing the constitutional rights of a citizen is liable under 42 U.S.C. § 1983 if the officer "had reason to know: (1) that excessive force was

4

being used, (2) that a citizen has been unjustifiably arrested, or (3) that a constitutional violation has been committed by a law enforcement official; <u>and</u> the officer had a realistic opportunity to intervene to prevent the harm from occurring." <u>Yang v. Hardin</u>, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original).

In the instant case, there are no facts in the record to support plaintiffs' claim. First, there is nothing in the record to suggest that Sturm and Burg knew that excessive force was being used. Both testified that they saw Cole-Garrit with a gun. Because there is no evidence that Burg saw the shooting, he could not have known whether excessive force was being used. Sturm testified that he saw Cole-Garrit raise a gun before O'Brien began shooting, who could not see anything once O/Brien stepped in his way. Thus, Sturm could not tell whether O'Brien's shooting was excessive.

Moreover, even if Sturm and Burg did know that excessive force was being used, the facts indicate that they did not have a realistic opportunity to prevent it. A "realistic opportunity" means that the officer had "a chance to warn the officers using excessive force to stop." <u>Miller v. Gonzalez</u>, 761 F.3d 822, 826 (7th Cir. 2014). In the instant case, the whole incident took place in a matter of seconds and there was no way for either Burg or Sturm to prevent the other officers from firing their weapons, even if they wanted to.

Plaintiffs' whole argument is that Burg and Sturm were in the car earlier in the day when either O'Brien or Bansley stated "we got your ass." Even assuming that it was these officers who drove onto the basketball court (no one actually identified the particular officers, just the car), and even assuming that O'Brien or Bansley made the statement, that is insufficient to support plaintiffs' claim. There simply is no evidence that Sturm or Burg knew that the four

5

officers would come upon Cole-Garrit later, that they had any reason to know that O'Brien and Bansley would use excessive force, or that they had any opportunity to intervene. Plaintiffs cannot "thwart summary judgment by speculating as to [Sturm and Burg's] state of mind." Id. at 827. Consequently, the court grants Sturm and Burg's motion for summary judgment on Count III. And because there are no other substantive allegations against Sturm and Burg, their motion for summary judgment on Count V, loss of consortium, is also granted.

Finally, O'Brien and Bansley seek summary judgment on Count II, which alleges that they agreed and planned to kill Cole-Garrit. To prevail on this claim, plaintiffs must show that (1) the individuals reached an agreement to deprive Cole-Garrit of his constitutional rights, and (2) took overt acts in furtherance of that agreement that actually deprived Cole-Garrit of those rights. Daugherty v. Page, 906 F.3d 606, 612 (7th Cir. 2018).

Defendants argue that there is no evidence of any agreement between them to deprive Cole-Garrit of his rights, nor is there any evidence that they took any overt acts to do so. Plaintiffs' response is that "defendants' argument is puzzling given the clear allegations within the Complaint." It is the plaintiffs' argument that is puzzling, however, because a party responding to a motion for summary judgment cannot rely on allegations in the complaint. Fed. R. Civ. P. 56(c); Becker, 914 F.3d at 110.

Plaintiffs do argue that the statement made on the basketball court that "we got your ass," demonstrates an agreement to violate Cole-Garrit's rights. Even if the statement was made, however, it is far too vague to conclude that it is evidence of an agreement to violate Cole-Garrit's rights. "A conspiracy claim cannot survive summary judgment if the allegations vague, conclusory and include no overt acts reasonably related to the promotion of the alleged

6

conspiracy." Amundsen v. Chicago Park District, 218 F.3d 712, 718 (7th Cir. 2000). Consequently, the court grants defendants' motion for summary judgment on Count II.

## **CONCLUSION**

For the reasons stated above, defendants' motion for partial summary judgment [Doc. 157] is granted. This matter remains set for a report on status on December 3, 2019, at 9:00 a.m.

**ENTER:** October 24, 2019

_____
**Robert W. Gettleman**
**United States District Judge**