IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Susie Garrit, *et al.*, | | |
| Plaintiffs, | | Case No.: 16-cv-7319 |
| v. | | JURY TRIAL DEMANDED |
| City Of Chicago, *et al.*, | | |
| Defendants. | | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO F.R.E. 702 AND
*DAUBERT* TO PRECLUDE TESTIMONY OF EMANUEL KAPELSOHN**

In support of their motion to prelude Defendants' retained expert witness, Emanual

Kapelsohn ("Kapelsohn"), from testifying at trial, Plaintiffs state as follows:

**I.     Defendants Bear The Burden Of Proving By A Preponderance Of The Evidence
That Kapelsohn's Testimony Satisfies Fed. R. Evid. 702 and *Daubert*.**

**A.   Three-Part *Daubert* Analysis**

In deciding whether or not to admit expert testimony under Fed. R. Evid. 702, "district

courts apply the *Daubert* framework...using a three-part analysis." *Cage v. City of Chicago*, 979

F. Supp. 2d 787, 799 (N.D. Ill. 2013) (citing *Myers v. Ill. Cent. R.R. Co.,* 629 F.3d 639, 644 (7th

Cir.2010)). This is "a conjunctive test and thus expert testimony must meet all [three]

requirements to be admissible; failure on any prong is fatal to admissibility." *Id.*

> ***1.   Defendants failed to prove that Kapelsohn is qualified to render
> any of his specific opinions.***

"First, the Court must determine whether the proposed witness is qualified as an expert

by knowledge, skill, experience, training, or education." *Cage*, 979 F. Supp. 2d at 799. "**The

question...is not whether an expert witness is qualified in general, but whether his

"qualifications provide a foundation for [him] to answer a specific question.**" *Gayton v.*

*McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (emphasis added) (citing *Meridia Prod. Liab. Litig. v.*

*Abbott Lab.,* 447 F.3d 861, 868 (6th Cir.2006) (district court did not abuse its discretion by

1

permitting qualified pharmacologist to testify as to drug temporarily elevating blood pressure of some patients, but not as to effects of high blood pressure on the human body.); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, 613 (7th Cir.2002). Courts "must look at each of the conclusions he draws individually to see if he has the adequate education, skill, and training to reach them." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Defendants' recitation of Kapelsohn's "extensive experience in multiple fields, giving him a strong foundation to" to offer all of his purported opinions, does not satisfy their burden. Nor does his purported "experience as a law enforcement instructor in the areas of use of force, firearms, and tactics" in "multiple jurisdictions." Dkt. 216, p. 4. Defendants must prove that Kapelsohn is qualified to render each and every opinion they seek to offer. Defendants have failed to meet their burden.

### 2. Defendants failed to prove the reasoning or methodology underlying Kapelsohn's opinions are reliable.

If the proponent of the expert can show that the expert is qualified to render the particular opinion at issue, "the Court must then decide whether the reasoning or methodology underlying the expert's testimony is reliable." *Cage*, 979 F. Supp. 2d at 799. "[I]n those cases in which the proponent of an expert could not demonstrate the reliability of the methodology employed by the expert, the court was required to disallow the testimony." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 800 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005). "**The opportunity for vigorous cross examination and the presentation of contrary evidence-the traditional and appropriate means of attacking shaky but admissible evidence,** *Daubert,* 509 U.S. at 596**-is not a basis for allowing otherwise inadmissible testimony to be admitted**." *Id.* (emphasis added).

### 3. Defendants failed to prove Kapelsohn's proposed testimony is relevant and will assist the jury.

"If these two requirements are met, the Court must assess whether the expert's proposed testimony will assist the trier of fact in understanding the evidence or to determine a factual issue." *Cage*, 979 F. Supp. 2d at 799. "This is essentially a relevance inquiry." *Id.* (citing *Porter v. Whitehall Labs., Inc.,* 9 F.3d 607, 613 (7th Cir.1993) ("Expert testimony which does not relate

to any issue in the case is not relevant and, ergo, non-helpful.") (quoting *Daubert,* 509 U.S. at 591, 113 S. Ct. 2786)).

### B. Defendants' Burden of Proof [Preponderance of the Evidence]

"The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the Daubert standard' by a preponderance of the evidence." *Cage*, 979 F. Supp. 2d at 799 (quoting *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Because Defendants have utterly failed to meet (or even acknowledge) their burden of proving by a preponderance of the evidence that any of Kapelsohn's opinions satisfy *Daubert*, he must be precluded from testifying at trial.

II. **Defendants Failed To Meet Their Burden Of Proving By A Preponderance Of The Evidence That Any of Kapelsohn's Opinions Satisfy *Daubert*.**

A. **<u>Kapelsohn Opinion 1</u>:** Nothing in the physical evidence and nothing I have observed at the incident scene or in my testing of the involved firearms as fired by the two officers, contradicts or is inconsistent with [the officers'] accounts of what occurred. To the contrary, these things are consistent with their accounts of the incident.[1]

Kapelsohn must be precluded from repeating this baseless opinion in front of an impressionable jury. *See e.g.*, *White v. Gerardot*, 1:05-CV-382, 2008 WL 4724004, at *3 (N.D. Ind. Oct. 24, 2008) (citing *Richman v. Sheahan,* 415 F.Supp.2d 929, 941-44 (N.D. Ill. 2006) (precluding purported expert testimony that "the wounds to the body strongly support [the detective's] account of the incident, and the subsequent investigation" because such an opinion would improperly bolster the detective's credibility and invade the province of the jury).

Defendants nonetheless claim, without support, that this opinion is "not designed to bolster the credibility of the Defendant Officers, as Plaintiff alleges, but to assist the jury in understanding the physical evidence and to show what information he relied on in reaching his opinions." Dkt. 216, p., 11. This argument is borderline nonsensical, given Defendants' failure to articulate the specific "physical evidence" and "observations" upon which this purported opinion

---

[1] Oddly, and without any explanation whatsoever, Defendants claim that "Plaintiff[s] misrepresent[] Mr. Kapelsohn's opinion by stating that his review of the evidence supports the officers' version of events." Dkt. 216, p. 11, Subsec. 4. As set forth above, Kapelsohn specifically opines that the" physical evidence," his "observ[ations] at the incident scene" (years after the fact), and his "testing of the involved firearms as fired by the two officers,"[1] "are consistent with [the officers'] accounts of the incident." Even a cursory review of Kapelsohn's report and deposition testimony, as set forth above, dispels any notion that Plaintiffs in any way misrepresented this purported testimony.

is based. "Expertise is a rational process, and a rational process implies express reasons for judgment." *Loeffel*, 387 F. Supp. 2d at 818. "An expert's opinion full of assertion but empty of reasons has no value and is devoid of persuasiveness and legal significance." *Id.*

Indeed, rather than identifying the specific evidence and observations upon which this opinion purportedly relies, Defendants characterize the specific sections outlined in Plaintiff's motion (and taken from Kapelsohn's report) as mere "comments" made by Kapelsohn "about certain evidence; specifically, the autopsy report, his inspection of the physical evidence, principles of force science[2], the fact that O'Brien saw Garrit point the gun at Bansley but Bansley didn't see it, and the Facebook photograph of Cole-Garrit in possession of a handgun..." Dkt. 216, p. 11. Because Defendants' have woefully failed to meet their burden of proving that Kapelsohn is qualified to render this opinion, and that the reasoning or methodology underlying this opinion are relevant and reliable, he must be precluded from offering this baseless opinion at trial.

### 1. *Autopsy Report*

Defendants claim that this section of Kapelsohn's report is "not an opinion; rather, a statement of one of the steps involved in Mr. Kapelsohn's analysis of the case" and thus, no reason to bar its admission." Dkt. 216, p. 12. This argument must be rejected. Defendants have not and cannot show that Kapelsohn is qualified to offer any opinions derived from the autopsy report or the "bullet defects" allegedly observed on Cole-Garrit's clothing. Even if Defendants could show that Kapelsohn is qualified to render this opinion– he is not – any opinion (or opinion disguised as a mere "comment[ary]") based on a "cursory review" of the evidence is inherently unreliable and must be excluded. Finally, as Defendants note, "[t]here is no dispute that Cole-Garrit sustained the gunshot wounds that he did..." Dkt. 216, p. 12. .Thus, no expert testimony is needed. Kapelsohn must therefore be precluded from offering any opinion or "comment[ary]" on the autopsy report or his "cursory review" of Cole-Garrit clothing.

---

[2] Based on Defendants' representation that Kapelsohn's purported "force science" based opinions are "relevant" to Kapelsohn's testimony regarding nationally-recognized and taught standards of care, this section has been relocated for purposes of this reply.

### 2. *Inspection of the Evidence*

Defendants appear to limit Kapelsohn's "inspection of the evidence" to his "inspection" of the pistol allegedly found 15-20 feet from Cole-Garrit's body.[3] Defendants fail to show how this testimony is relevant where, as here, the Defendant Officers were not aware of the "specifics" of the particular handgun and "how [that particular handgun] functions" when they shot and killed Colle-Garrit. As the Seventh Circuit has repeatedly reaffirmed, "'when evaluating the reasonableness of an officer's actions, the fact finder must do so with blinders on-viewing the circumstances and facts only as they were known to the officer at the time.'" *Jordan v. City Chicago*, No. 08 C 6902, 2012 WL 254243, at *4–5 (N.D. Ill. Jan. 27, 2012) (quoting *Common,* 661 F.3d at 943).

By way of example, in *Jordan*, Judge St. Eve explained as follows:

A review of Officer O'Shaughnessy's deposition testimony indicates that he believed that Van Allen pointed a black and silver handgun, not a toy gun, at him on the night in question...It was not until *after* the shooting that the officers learned that the gun in Van Allen's possession at or around the time of the shooting was a paintball gun. As such, whether or not the paintball gun at issue is capable of causing serious injury is irrelevant to what Officer O'Shaughnessy thought at or around the time of the shooting because he did not believe, at that time, that Van Allen had a paintball gun on his person.

*Jordan v. City Chicago*, No. 08 C 6902, 2012 WL 254243, at *4–5 (N.D. Ill. Jan. 27, 2012)

Although this case does not involve a toy gun, the analysis remains the same. Because the specific details of the gun recovered from the scene, including the particular make and model of the handgun and the speed with which that particular handgun can be fired, is of no relevance whatsoever. Thus, because the specific handgun at issue was unknown to Defendants Officers at the time they shot and killed Cole-Garrit, this purported testimony is unnecessary, irrelevant, and must be excluded.

### 3. *The Fact That O'Brien Saw Garrit Point The Gun At Bansley, But Bansley Did Not*

Defendants make no effort whatsoever to show that this proposed testimony meets any of the *Daubert* factors. Instead, Defendants claim that "[t]his section of his report and his opinion

---

[3] Because Defendants fail to respond to Plaintiffs' arguments regarding Kapelsohn's description of the officers' specific firearms and/or the alleged time testing performed, they have waived any claim as to its admissibility.

regarding this subject matter would only become relevant based upon the cross-examination of him by Plaintiffs." Dkt. 216, p. 14. Defendants' argument fails. Proposed expert testimony that fails to satisfy *Daubert* is inadmissible, regardless of whether it is presented on direct or cross examination. See *Loeffel*, 387 F. Supp. 2d at 800 ("The opportunity for vigorous cross examination and the presentation of contrary evidence-the traditional and appropriate means of attacking shaky but admissible evidence, *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786-is not a basis for allowing otherwise inadmissible testimony to be admitted."). Because Defendants made no effort to show that Kapelsohn is qualified to render this opinion, or that it is sufficiently reliable to present to the jury, it must be excluded.

### 4. *Patently Unreliable Opinion That The Gun In The Facebook Photograph Is The Same Gun Recovered From The Scene*

Defendants also seek to have Kapelsohn render an "expert opinion" that the Facebook photo of Mr. Garrit with a pistol in his waistband is "***the same weapon***" recovered from the scene and alleged to have been in Cole-Garrit's possession at or immediately before he was shot and killed by Defendant Officers. Dkt. 216, p. 15. This opinion is patently unreliable, unhelpful, and must be excluded.

Regardless of Kapelsohn's experience and familiarity with various firearms (including his previous "ownership" of the same model handgun and "fir[ing] of several"), there is absolutely no reliable basis upon which Kapelsohn could reasonably conclude that the gun in the Facebook photograph and the gun recovered from the scene are one in the same. *See Smith v Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir.1999)) ("A court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter. Even '[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method.'"). Kapelsohn's recitation of the alleged general characteristics of a half-visible, low, quality, blurry Facebook photograph (Ex. A) to support his purported opinion that the gun in the photo is, in fact, the exact same gun found on the scene (Ex. B), is patently unreliable and must be excluded. As our courts have held, there is "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Loeffel*, 387 F. Supp. 2d at 814 (internal citations and quotations omitted).

Nor is this testimony helpful to the jury, who is perfectly capable of comparing gun in the Facebook photograph with the gun recovered from the scene and deciding for themselves what the evidence shows. Kapelsohn's identification of the visible, external components of the pictured firearm is patently unnecessary. See *Jordan v. City Chicago*, No. 08 C 6902, 2012 WL 254243, at *7–8 (N.D. Ill. Jan. 27, 2012) (citing *United States v. Hall,* 93 F.3d 1337, 1343 (7th Cir.1996) (noting that "[u]nless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403); *Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 714 (7th Cir.2004) (affirming district court's exclusion of an expert's opinion based upon a videotape because "the videotape could be played for the jury and entered into evidence, and consequently, jurors could make a determination for themselves.... Based upon this independent assessment ... the jury could then draw [its own] inferences ... and expert testimony would be of no help."); *Aponte v. City of Chicago,* No. 09–CV–8082, 2011 WL 1838773 (N.D. Ill. May 12, 2011) ("[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony.").

Moreover, Kapelsohn's recitation of the "manufacturing history of the Taurus firearm" recovered from the scene, based on information gathered from a single purported phone call with the manufacturer, is inadmissible hearsay and must be excluded. Dkt. 216, p. 16. See *Loeffel*, 387 F. Supp. 2d at 808 (*citing e.g.*, *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 613 (7th Cir.2002); *TK-7 Corp. v. The Estate of Barbouti,* 993 F.2d 722, 731-34 (10th Cir.1993); *In re: James Wilson Associates,* 965 F.2d 160, 173 (7th Cir.1992) ("[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to

base his opinion.")). "The problem...is that the expert is vouching for the truth of what another expert told him-he is merely that expert's spokesman." *Id.* This is precisely the situation here: If allowed to testify, Kapelsohn would be "hid[ing] behind" statements allegedly made by the manufacturer of the Taurus and acting as its "mouthpiece." *Id.* at 809. He would, in effect, be vouching for the manufacturer's claims, when he has absolutely no knowledge of the accuracy of those claims and cannot be properly cross-examined. It is patently "improper to use an expert witness as a screen against cross-examination." Id. (internal quotations omitted). Without the expert testimony of the manufacturer of the firearm recovered from the scene, Kapelsohn's testimony will "rest[ ] on air." *Dura Automotive,* 285 F.3d at 615. "If the underlying assumptions cannot be proven by admissible, competent evidence, the very nature of which would appear to require expert testimony," Kapelsohn's opinion that the two guns are the same based, in part, on statements made by the manufacturer not subject to cross examination, "would have no evidentiary support and would be irrelevant." Id. (citing Rule 402, Federal Rules of Evidence). Because Defendants have not designated the manufacturer as an expert witness in this case, even if initially allowed, Kapelsohn's testimony "would ultimately have to be stricken." *Id.*

      **B. <u>Kapelsohn Opinion 2(a)</u>:** Provided the involved officers are accurately recounting what they perceived on the night of August 19, 2014, the use of deadly force by officers O'Brien and Bansley against Mr. Garrit was such as other "reasonable officers on the scene" would have used under the same totality of circumstances as confronted them that night.

Defendants' claim that this opinion does not constitute an "improper legal conclusion" based on the general proposition that "an opinion is not inadmissible just because it touches on an ultimate issue," is woefully inadequate. Dkt. 216, p. 8. As cited in Plaintiffs' motion, "[a]lthough Rule 704(a) states that '[a]n opinion is not objectionable just because it embraces an ultimate issue,' [Rules 702 and 704] prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Roundy's Inc. v. N.L.R.B.,* 674 F.3d 638, 648 (7th Cir. 2012). Thus, in addition to the reasons set forth in Plaintiffs' motion, this opinion must be excluded based on Defendants' failure to meaningfully respond to the substance of Plaintiffs' motion.

Defendants' additional argument that "'an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true,'" is equally unavailing. Dkt. 216, p. 8. As Plaintiffs explained, Kapelsohn's opinions are not based on mere hypotheticals (or a mere assumption that the officers' collective version of facts are true); rather, they are premised on – and inextricably intertwined with – his "opinion" that the evidence is "consistent" with the officers' accounts of the incident, effectively telling the jury what facts to believe and what conclusion they should reach. This is wholly improper. Because Kapelsohn seeks to opine that the physical evidence, his observations, and his irrelevant "testing" is consistent with the officers' version of events, his remaining opinions are so inextricably intertwined with this improper credibility determination that they must be excluded. *See e.g.*, *Jordan v City of Chicago*, No. 08 CV 6902, 2012 WL 88158 (N.D. Ill. Jan, 11, 2012) (citations omitted) (determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of that testimony). "Expert testimony that rests solely on 'subjective belief or unsupported speculation' is not reliable, and not admissible." *Daubert*, 509 U.S. at 590.

Thus, for these reasons and the reason set forth in Plaintiffs' motion, this opinion must be excluded.

> **C. <u>Kapelsohn Opinion 2(b)</u>: Provided the involved officers are accurately recounting what they perceived on the night of August 19, 2014, the use of deadly force by officers O'Brien and Bansley against Mr. Garrit was in keeping with nationally-accepted and nationally-taught police use of force tactics, standards, and principles.**

Although Defendants claim that Kapelsohn "will merely set forth the nationally recognized training standards and methods for law enforcement officers and juxtapose those with the Defendant Officers' version of events," Dkt. 216, pp. 9-10, subsec. 2), this is not an accurate representation of the full scope of Kapelsohn's purported opinion. And, although Plaintiffs acknowledged, as a general principle, that expert testimony on generally accepted police practices may be helpful to the jury, because Kapelsohn's purported testimony is inextricably intertwined with credibility determinations and legal conclusions, however, it must be excluded.

As our courts have explained, "[e]xpert testimony about police standards may appropriately assist the jury in resolving some excessive-force questions, but sometimes evidence of this type is unhelpful and thus irrelevant, particularly when no specialized knowledge is needed to determine whether the officer's conduct was objectively unreasonable." *United States v. Brown*, 871 F.3d 532, 534 (7th Cir. 2017). Indeed, although Defendants assert that "[e]xpert testimony is routinely allowed in excessive force cases," not a single case cited by Defendants supports their position. In *Florek*, for example, the Seventh Circuit explicitly held that the district court *did not err* in precluding the plaintiff's police procedures expert from testifying at trial. *Florek v. Village of Mudelien, Ill.*, 649 F.3d 696 (7th Cir. 2011)); Dkt. 216, p. 5. This case does not, by any means, support Defendants' position.

Defendants' reliance on a nearly 30-year-old, non-binding Fourth Circuit case cited by the *Florek* court is similarly misplaced. *Kopf v. Skyrm,* 993 F.2d 374 (4th Cir.1993). In that case, the Fourth Circuit held that the district court abused its discretion in "excluding expert testimony about whether it was reasonable for police to use a canine officer (and its canines) in bringing a suspect to heel." *Id. Kopf* is inapposite to the case at bar. In fact, as the Fourth Circuit later made clear, "*Kopf* **did not establish a blanket rule that expert testimony is generally admissible in excessive force cases**." *Clem v. Corbeau*, 98 F. App'x 197, 201 (4th Cir. 2004) (citing *Kopf,* 993 F.2d at 378) (emphasis added). "Rather, [the court] there specifically noted that 'the facts of every case will determine whether expert testimony would assist the jury.'" *Id.* (citing *Kopf*, F.2d at 379). Distinguishing its decision in *Kopf* from excessive/deadly force shooting cases, the *Clem* court explained as follows:

> Here the proffered experts did not offer expert testimony providing specialized knowledge on 'obscure skills.' Their only relevant testimony involved opinions, given their particular interpretations of the contested facts, as to the reasonableness of [the officer]'s use of force at issue in this case (i.e. his shooting of [the plaintiff]). Instead of assisting the jury, such expert opinion risked 'supplant[ing] a jury's independent exercise of common sense' and its role of determining the facts. *Kopf*, F.2d at 377.

*Clem*, 98 F. App'x at 201. Thus, the court held, "the district court did not abuse its discretion in excluding this testimony." *Id.*

Here, like in *Clem*, this case surrounds the reasonableness of the Defendant Officers' shooting of Darius Cole-Garrit, based on the facts known to the officers at the time. Unlike cases

involving the use of police dogs or complicated equipment outside the general understanding of a lay person, the reasonableness of the Defendant Officers' shooting of Cole-Garrit does not require specialized knowledge of "obscure skills." *Id.* As such, no expert testimony is needed on this subject. Kapelsohn's opinions regarding the reasonableness of the Defendant Officers' use of force must be excluded, among other reasons, to avoid the substantial risk that Kapelsohn's testimony supplants the jury's "independent exercise of common sense and its role of determining key facts." *Clem*, 98 F. App'x at 201 (citing *Kopf*, F.2d at 377).

Along with his testimony about alleged national police officer training, Kapelsohn seeks to explain numerous "force science" principles to the jury. This testimony must likewise be excluded. Defendants' blanket claim that Kapelsohn has "regularly testified for many years on force science issues" does not render him qualified to offer an opinion as to the scientific and/or psychological concepts underlying the purported "force sciences." Dkt. 216, p. 4. Indeed, Defendants fail to cite a single case where such testimony was actually admitted. *Id.*; *But see Jones v. Allen*, 2016 WL 9443772 (D. Md. Oct. 24, 2016) (precluding Kapelsohn from rendering any opinions in the so-called field of forces sciences). Nor does Kapelsohn's purported "involve[ment] in curriculum development in training law enforcement officers that takes Force Science principles into consideration in the areas of firearms and tactics techniques" render him qualified to present these scientific "principles" to a jury. If anything, the fact that Kapelsohn, a firearms instructor and paid expert witness, has been teaching officers in various departments around the country about scientific principles for which he has no formal training or education illustrates the inherent issues with the quality and nature of such training and Kapelsohn's purported expertise on the subject. It certainly does not render Kapelsohn qualified to relay these principles to a jury.

In an attempt to distinguish these "force science" based opinions from those he was precluded from offering in *Jones*, Defendants claim that they "do not seek to have Mr. Kapelsohn render a 'force science opinion' in the case at hand." Dkt. 216, p. 13. Rather, Defendants claim that such testimony well be limited to "the training of police officers and the standards that govern their use of deadly force in light of the description of events provided by

11

the Defendant Officers in order to aid the jury in deciding whether their actions were reasonable" Dkt. 216, pp. 13. In essence, Defendants ask this court to allow Kapelsohn to provide the exact same testimony he is not qualified to render with the caveat that these principles are taught to (some) officers nationwide. Defendants' attempt to disguise Kapelsohn's unqualified "force science" based opinions as mere statements of national training must be rejected. Moreover, as set forth *infra*, because Kapelsohn has no knowledge of the training actually provided by CPD to its officers, and specifically, Officers O'Brien and Bansley, the fact that he has provided this sort of training to other departments nationwide is of no relevance to this case.

> **D.** **Kapelsohn Opinions 2(c):** Provided the involved officers are accurately recounting what they perceived on the night of August 19, 2014, the use of deadly force by Officer's O'Brien and Bansley against Mr. Garrit was consistent with the training they received from the Chicago Police Department.
>
> **Kapelsohn Opinion 2(d):** Provided the involved officers are accurately recounting what they perceived on the night of August 19, 2014, the use of deadly force by Officer's O'Brien and Bansley against Mr. Garrit was consistent with the CPD's use of force policies.

Kapelsohn's experience as a "law enforcement instructor" in "multiple jurisdictions" (not including Chicago) does not render him qualified to offer an expert opinion regarding the training received by Defendant Officers or CPD's policies on use of force. Dkt. 216, p. 4. In fact, Kapelsohn has no idea what training the Defendant Officers received given his unfamiliarity with CPD's training practices, and his failure to review the officers' specific training records. Because Defendants failed to establish that Kapelsohn has any specialized knowledge whatsoever regarding CPD's training and policies, these purported opinions must be excluded.

They must also be excluded as irrelevant. As our courts have held, "[a]n officer's compliance with or deviation from departmental policy doesn't determine whether he used excessive force." *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017). "Put another way, a police officer's compliance with the rules of his department is neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness requirement." *Id.* "Police policies are not nationally uniform; nor are they static." *Id.* "If compliance with departmental policy were decisive, the Fourth Amendment's reasonableness standard would 'vary from place to place and from time to time.'" *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 815 (1996)). "Worse, if

compliance with departmental policy were the applicable legal standard, the police department itself would become the arbiter of Fourth Amendment reasonableness—a prospect that would have horrified those responsible for the Amendment's ratification." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (Fourth Amendment rights were "deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.") (quotation marks omitted)); *See also Daubert*, 509 U.S. at 590 ("Expert testimony that rests solely on 'subjective belief or unsupported speculation' is not reliable, and not admissible.").

In fact, Defendants concede that CPD's use of force policies "are not relevant to whether the Defendant Officers' actions were reasonable," and that they "have no intention of having Mr. Kapelsohn offer opinion generally about CPD's policies." Dkt. 216, p. 10. Defendants nonetheless claim that he should be allowed to present this irrelevant testimony on cross-examination. As explained *supra*, inadmissible expert opinion does not become admissible by mere virtue of the question being asked on cross-examination. See *Loeffel*, 387 F. Supp. 2d at 800. Without the requisite qualifications to render this opinion in the first place, Kapelsohn cannot render it on cross-examination.

Accordingly, Kapelsohn's proposed testimony regarding the Defendant Officers' purported training and the department's internal policies must be excluded.

### III. Kapelsohn's "Rebuttal" Opinions As To The Relevancy of Certain Evidence Relied on By Plaintiffs' Expert Are Wildly Inappropriate And Must Be Excluded.

#### A. If Defendants intended to challenge the relevancy of Plaintiff' expert opinions, they were required to file a Daubert Motion on or before March 31, 2021, pursuant to the Court's order.

On March 26, 2021, the parties were granted leave to file *Daubert* motions on before march 31, 2021. Dkt. 210. On March 31, 2021, Plaintiffs filed their *Daubert* motion to preclude Kapelsohn from offering any of his purported opinions at trial. Dkt. 212. In keeping with defense counsel's representations to the Court and Plaintiff's counsel, Defendants did not file a *Daubert* motion challenging the admissibility of Plaintiff's expert's opinions, which Plaintiff disclosed to Defendants on October 18, 2018, nearly three years ago.

13

Now, in response to Plaintiff's Daubert motion challenging Defendants' proposed expert testimony, in part, on relevancy grounds, Defendants brazenly assert that "Plaintiffs' expert and his opinions will be the subject of motions *in limine* as part of the pre-trial order." Dkt. 216, p. 16. Defendants must be precluded from filing any such motion. If Defendant intended to challenge the relevancy of Plaintiff's expert opinions, they were required to file a *Daubert* motion according to the schedule set by this Court. See e.g., *Novotny v. Weatherford Intl., LLC*, 1:16-CV-260, 2018 WL 4053871, at *1 (D.N.D. May 9, 2018) ("A *Daubert* motion cannot be re-titled to avoid the meeting of pre-established deadlines."); *Rutz v. Novartis Pharm. Corp.*, 2013 WL 1412276, at *1 (S.D. Ill. Apr. 8, 2013) ("*Daubert* motions are typically due at the dispositive motion deadline so the Court has adequate time to research the issues presented, hold a hearing, and formulate a ruling.");*Crescent Towing & Salvage Co. v. M/V CHIOS BEAUTY*, 2008 WL 5504701, at *1 (E.D. La. July 18, 2008) (holding untimely *Daubert* motion waived). Allowing Defendants to challenge the admissibility of Plaintiffs' expert through a motion *in limine* just prior to the start of trial, long after the deadline set for the parties' to file Daubert motions, and the Plaintiffs' Daubert motion has been fully briefed and likely ruled upon, would result in a significant windfall for Defendants in that they would have more time to prepare for trial, knowing precisely which, if any, of its expert's opinions will be permitted. By that time, Plaintiffs' Daubert motion will have been fully briefed and the court will likely have issued an order on Plaintiffs' motion. Giving Defendants the benefit of full briefing on its competing expert, and the Courts' opinion as to the admissibility of its own expert, Defendants will have a significant unfair advantage not only preparing for trial without surprises at to the admissibility of its experts' opinions, but also will have a significant benefit in drafting its motion, having already received all of Plaintiffs' arguments and case law supporting their position. This is patently unfair. Defendants should not receive a windfall based on their decision to disregard the *Daubert* motion deadline and instead wait until just before trial, contrary to the trial court's express wishes, to file its challenges to Plaintiffs' expert's testimony.

14

**B. If Defendants intended to challenge the relevancy of Defendants' expert opinions, they were required to file a Daubert Motion on or before March 31, 2021, pursuant to the Court's order.**

Even if Defendants were allowed to obfuscate the court's order by retitling their untimely *Daubert* motion as a motion *in limine*, Kapelsohn is not qualified to offer an opinion regarding whether certain evidence is or is not relevant. Dkt. 216, p. 16. It is up to the court to decide what evidence is relevant and admissible, not the Defendants' paid expert witness. *See e.g.*, *Harris v. City of Chicago*, 14 C 4391, 2017 WL 2436316, at *15 (N.D. Ill. June 5, 2017) ("As a general rule, an expert cannot offer legal opinions or conclusions.").

According to Defendants, if the Court finds that Plaintiffs' expert's testimony or the evidence relied on by him is relevant and admissible, Defendants will nonetheless have their paid expert witness tell the jury exactly the opposite of what the court has already ruled. Dkt. 216, p. 16.This argument is as brazen as it is inappropriate. Any claim that such testimony is anything but an impermissible (and inaccurate) legal conclusion should be summarily rejected.

**A. CONCLUSION**

For these reasons and the reasons set forth in Plaintiffs' Motion (Dkt. 212), Plaintiffs respectfully request that this Court bar Defendants' retained expert witness, Emanuel Kapelsohn, from testifying at trial.

Respectfully submitted,

*/s/ Christina Smedley*
Christina Smedley
Matthew Amarin
Haytham Faraj
**LAW OFFICES OF HAYTHAM FARAJ**
1935 W Belmont Ave.
Chicago, IL 60657
312-635-0800
christina@farajlaw.com

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that on May 10, 2021, I electronically filed the above document with the Clerk of the Court via CM/ECF filing system.

*/s/ Christns Smedley*

15