# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSIE GARRIT, as administrator of the estate of DARIUS COLE-GARRIT; UNIQUE HATCHET, on behalf of her minor child; and FALICIA LEWIS, on behalf of her minor child,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, an Illinois Municipal Corporation; Officer Matthew O'BRIEN, #10634; and Officer James BANSLEY, #10927;<br><br>Defendants. | Case No.: 16-cv-7319<br><br>JURY TRIAL DEMANDED |

# SECOND AMENDED COMPLAINT

PLAINTIFFS, by and through their attorneys at the **Law Offices of Haytham Faraj**, complain of Defendants, **CITY OF CHICAGO**, CHICAGO POLICE OFFICERS **MATTHEW O'BRIEN** and **JAMES BANSLEY** as follows:

*- Introduction -*

Plaintiffs bring this action pursuant to 42 U.S.C. §§1981, 1983, and 725 ILCS 5/13-203. The case seeks money damages and, perhaps

1

as a collateral consequence, justice through the criminal prosecution of the police officers responsible for the murder of DARIUS COLE-GARRIT [hereinafter "COLE-GARRIT"].

On August 19, 2014, on a warm summer day COLE-GARRIT was gunned down by the two defendant police officers named in this Complaint. The police officers first claimed that COLE-GARRIT fired a gun at them. That turned out to be untrue. They, then, claimed he pointed a gun at them. That also turned out to be untrue. When his parents demanded answers for the unjustified killing they were met with the deafening silence of the Chicago Police Department shielded by the fortress of blue that closed ranks to protect the perpetrators. This lawsuit seeks justice for COLE-GARRIT, for his minor children who will grow fatherless. Plaintiffs assert the underlying policies and practices of the CITY OF CHICAGO are the moving force behind COLE-GARRIT's death.

## JURISDICTION and VENUE

1. Plaintiffs bring this action pursuant to 42 U.S.C. §1981 and §1983. The Jurisdiction of the Court is invoked pursuant to the Civil Rights

Act, 42 U.S.C. §§1981 and 1983 *et seq*; the Judicial Code, Sections 1331, 1343(a), and 1367; and the Constitution of the United States of America.

2. Venue is proper in this District under 28 U.S.C. 1391(b). The parties reside, or at the time of the events took place, resided in this judicial district. The events giving rise to the Plaintiffs' claims also occurred in this judicial district.

## **PARTIES**

3. SUSIE GARRIT was appointed as the supervised administrator of the Estate of COLE-GARRIT, by the Probate Division of the Circuit Court of Cook County, Illinois.

4. MS. GARRIT is a resident of Cook County, Illinois, and is the mother of COLE-GARRIT.

5. Darius Cole-Garrit (deceased). COLE-GARRIT was killed by the Defendant Officers. The killing occurred in Cook County, Illinois.

6. UNIQUE HATCHET is the mother of one of COLE-GARRIT's minor children.

7. FALICIA LEWIS is the mother of one of COLE-GARRIT's minor children.

3

8. Defendant Officers, at all times relevant to the allegations made in this complaint, were duly appointed police officers employed by the CITY OF CHICAGO, acting within the scope of their employment with the CITY OF CHICAGO and under the color of State Law. The individual officers are being sued in their individual and official capacity: MATTHEW O'BRIEN and JAMES BANSLEY.

9. Defendant CITY OF CHICAGO, a municipality duly incorporated under the laws of the State of Illinois, is the employer and principal of the individual Defendant Officers. At all times relevant to this Complaint, the CITY OF CHICAGO employed the individual officers. The CITY OF CHICAGO is responsible for the policies, practices, and customs of its Police Department.

## FACTS COMMON TO ALL COUNTS

12. COLE-GARRIT was born in Chicago on March 22, 1993.

13. COLE-GARRIT lived in one of Chicago's close-knit neighborhoods, the Altgeld Gardens.

14. In the Spring of 2014, COLE-GARRIT had the opportunity to leave Chicago with his soon-to-be pregnant girlfriend.

15. COLE-GARRIT moved to Minnesota in approximately May 2014.

16. He first began working at a Subway and then was able to secure a job in a factory.

17. On or about August 15, 2014, COLE-GARRIT and his pregnant girlfriend came back to Chicago for the "Old Timer's Picnic." An annual gathering to honor the neighborhood's senior citizens.

18. COLE-GARRIT's girlfriend returned to Minnesota on about August 18, 2014. However, COLE-GARRIT stayed in Chicago to see his 16-month-old daughter.

*THE BASKETBALL COURT THREATS*

19. On the afternoon of August 19, COLE-GARRIT was playing basketball with several people at Golden Gate Park, a public park in the neighborhood.

20. While the young men were playing basketball, a dark-colored SUV drove into the park and onto the basketball court.

21. The SUV was unmarked, but several witnesses recognized the men in the vehicle as Chicago Police Officers because the driver, Officer

5

O'BRIEN, and the front passenger, Officer BANSLEY, were known as troublemakers in the neighborhood.

22. The officers were also wearing tactical vests, which are commonly worn by CPD officers.

23. The police did not identify themselves, or get out of the vehicle. They simply drove onto the basketball court, interrupting the game for no reason.

24. One of the officers said to COLE-GARRIT words to the effect of, "We got your ass, we are going to get you" or words of similar meaning.

25. The SUV then drove away.

26. COLE-GARRIT was shocked and scared by what had occurred.

27. Soon thereafter, COLE-GARRIT called his girlfriend in Minnesota.

28. COLE-GARRIT told his girlfriend words to the effect of, "The cops just said they are going to kill me! I don't know what to do!" COLE-GARRIT's girlfriend warned him to stay safe.

29. Later that day, COLE-GARRIT went to visit a friend near the 13300 block of South Forestville Ave.

## *THE MURDER*

30. Hours after the basketball court confrontation, COLE-GARRIT and his friend were standing in front of a house on 133rd St., just East of the 13300 block of South Forestville Ave.

31. COLE-GARRIT had his back to the street; the friend had his back towards the house.

32. COLE-GARRIT was standing on the pavement, with a bicycle straddled between his legs while the two spoke.

33. To the west of the two young men appeared an SUV oriented East on 133rd St.

34. Suddenly, the SUV gunned its engine and sped straight towards the two young men.

35. COLE-GARRIT looked over, saw the SUV headed straight for him, and jumped off the bicycle to avoid being hit.

36. The SUV ran over the bicycle.

37. COLE-GARRIT was frightened for his life and took off running.

38. As COLE-GARRIT was running away from the SUV, the officers got out of the vehicle.

39. Immediately upon exiting the vehicle, the two defendant officers opened fire.

40. Officer O'BRIEN shot at COLE-GARRIT 11 times.

41. Officer BANSLEY shot at COLE-GARRIT 5 times.

42. COLE-GARRIT was shot in the back of his head as he ran for his life from his assassins. That bullet entered his skull and lacerated the right parietal lobe causing a subarachnoid hemorrhage over the parietal lobes. Additional bullets entered under his right eye, on the left side of his neck, both sides of his upper chest, both thighs, his left hip, his left elbow, and right foot.

43. The cause of death was the multiple gunshot wounds.

44. The Chicago police murdered COLE-GARRIT without lawful cause or provocation. In fact, they announced their intention to commit premeditated murder on the basketball court, and then they followed through with their threat and executed him in front of his neighbors.

## *THE POLICE OFFICER DEFENDANTS*

45. After repeated, and oft-thwarted Freedom of Information Act requests, COLE-GARRIT's estate learned that the four police officers who occupied the SUV at the time the threat to COLE-GARRIT was

made and later when he was shot are Matthew O'BRIEN, James BANSLEY, Ronny Strum, and Kyle Burg.

46. All four men were on-duty and acting under the color of state law during the murder. They were also on-duty during the subsequent cover-up.

*CITY OF CHICAGO PROMOTES POLICE COVER-UPS*

48. The CITY OF CHICAGO maintains a policy, practice, or custom of failing to properly train, supervise, discipline, and controls its officers, which was the moving force behind the violation of the COLE-GARRIT's constitutional rights, ultimately leading to his death. In the alternative, the CITY OF CHICAGO through its officials and supervisors –the Mayor, the Police Superintendent, the Organized Crime Bureau Chief and the Gang Enforcement Division Commander along with others yet unknown- knew or had reason to know that the individual Defendants involved in the shooting had a practice of committing constitutional violations, including the application of excessive force, yet purposely ignored the conduct.

49. The CITY OF CHICAGO is and has been on notice of O'BRIEN and BANSLEY's unlawful and unconstitutional conduct for several years.

50. At least 19 formal complaints and four federal lawsuits have been filed against O'BRIEN[1].

51. At least 16 formal complaints and three federal lawsuits have been filed against BANSLEY[2].

52. The CITY OF CHICAGO maintains a policy and/or a custom that allowed the defendant officers to execute COLE-GARRIT, consult with each other and representatives of the Fraternal Order of Police (FOP), and establish their false narratives.

53. The CITY OF CHICAGO maintains a policy and/or a custom that encourages officers to protect rogue and abusive officers. This policy and/or custom is known as the "code of silence[3]."

54. The corruption goes so far that the CITY OF CHICAGO has fired detectives assigned to the City's Independent Police Review Authority for refusing to falsify reports to cover up the crimes committed by Chicago police officers.[4]

---

[1] https://cpdb.co/data/AO5mNL/citizens-police-data-project

[2] https://cpdb.co/data/AO5mNL/citizens-police-data-project

[3] *Obrycka v. City of Chicago*, 07-cv-02372 (N.D. Ill 2011)

[4] See Ex. 1 – IPRA Detective Fired for Failing to Change Findings

## COUNT I - 42 U.S.C. §1983
EXCESSIVE FORCE

55. Plaintiffs incorporate by reference all other paragraphs in this Complaint as though fully alleged herein.

56. The Defendant Officers agreed and planned together to kill COLE-GARRIT and announced their plan to do so while he was playing basketball.

57. The Defendant Officers completed the objective of their agreement when they executed COLE-GARRIT.

58. COLE-GARRIT was not an imminent threat to the Defendant Officers or anyone else.

59. The actions of the Defendant Officers constitute unreasonable, unjustifiable, and excessive force against COLEGARRIT, thus violating his rights under the Fourteenth Amendment to the United States Constitution.

60. As a result of the above-detailed and unreasonable actions of the Defendant Officers, COLE-GARRIT's life was taken.

61. Defendants acted under color of law.

## Count II - 42 U.S.C. §1983
MUNICIPAL LIABILITY

62. Plaintiffs incorporate by reference all other paragraphs in this complaint as though fully alleged herein.

63. COLE-GARRIT was unjustifiably murdered by the Defendant Officers.

64. At the time of his murder, the CITY OF CHICAGO had a policy, practice, or custom of failing to properly train, supervise, disciple, and control its officers.

65. At the time of his murder, the CITY OF CHICAGO maintained a "code of silence" and had a policy, practice, or custom that hid, covered-up or ignored misconduct by officers despite knowledge of the violations by the Superintendent of Police, the Mayor or senior leaders in the Bureau of Organized Crime, all of whom were policy-making officials who knew or had reason to know about the defendants' actions and the existence of the aforementioned policies and/or customs within the Chicago Police Department.

66. The CITY OF CHICAGO's aforementioned policies, practices, or customs were the moving force behind the violation of COLE-GARRIT's constitutional rights, ultimately leading to his death in

that defendant officers were emboldened to carry out the execution and subsequent cover up of COLE-GARRIT's death without fear of condemnation or disciplinary action.

### Count III – 735 ILCS 5/13-203
#### LOSS OF SOCIETY

67. Plaintiffs incorporate by reference all other paragraphs in this Complaint as though fully alleged herein.

68. COLE-GARRIT's minor children lost their father due to the unjustifiable and unreasonable forceful conduct of the individual Defendants and the CITY's policy and/or custom which allowed and encouraged the officers to target individuals like Darius COLE-GARRIT.

69. COLE-GARRIT's children are and will continue to be deprived of the reasonable value of the society, companionship, guidance, services, and comfort that they would have received from COLE-GARRIT.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against the Defendants CITY OF CHICAGO, an Illinois Municipal Corporation; Officer Mathew O'BRIEN, #10634 and Officer James BANSLEY, #10927 for the above alleged constitutional right violations:

13

1. For compensatory damages in an amount of not less than Thirty Millions Dollars ($30,000,000.00) or such other amount as may be deemed fair and just by the trier of fact.
2. For punitive damages against the individual Defendants in an amount to be determined by the trier of fact.
3. For pre-judgment and post-judgment interest.
4. For attorneys' fees and costs pursuant to 42 U.S.C. §1988.
5. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands trial by jury for all issues and claims raised in this complaint.

Respectfully Submitted by,

*/s/ Haytham Faraj*
Haytham Faraj, Esq.
Matthew Amarin, Esq.
Christina Smedley, Esq.
The Law Offices of Haytham Faraj
1935 West Belmont Avenue
Chicago, IL 606057
Haytham@farajlaw.com
Matthew@farajlaw.com
Christina@farajlaw.com