SUSIE GARRIT, as administrator of the estate of DARIUS COLE-GARRIT; UNIQUE HATCHET, on behalf of her minor child; and FALICIA LEWIS, on behalf of her minor child,

Plaintiffs,

v.

CITY OF CHICAGO, an Illinois Municipal Corporation; Officer Matthew O'BRIEN, #10634; Officer James BANSLEY, #10927;

Defendants.

Case No.: 16-cv-7319

JURY TRIAL DEMANDED

## MOTION TO ENFORCE SETTLEMENT

Plaintiffs, by and through undersigned Counsel, respectfully request an Order of Court enforcing the settlement agreement entered between the parties and estopping Defendants from withdrawing from said agreement and/or denying its existence.

## Timeline of Events

1.     In July 2022, while the parties were preparing the Final Pretrial Order, Defendants, through Corporation Counsel, offered $750,000 to settle this case.

2.     Plaintiffs rejected Defendants' offer.

3.     On October 14, 2022, Plaintiffs made a demand to settle this case for $3,000,000.

4.     On November 7, 2022, seven (7) days before the Final Pretrial Order was due, Defendants offered $1,800,000 to settle the case.

1

5.     On November 8, 2022, in light of Defendants' offer to settle and DNA results confirming Cole-Garrit left behind two minor heirs (rather than three), Plaintiffs reduced their demand from $3,000,000 to $2,000,000 ($1,000,000 per minor heir).

6.     The same day, Counsel for Defendants advised that a memo was drafted and sent to "the powers that be."

7.     On November 10, 2022, four (4) days before the Final Pretrial Order was due, Defendants were still waiting to hear back from their "front office" regarding settlement. Accordingly, the parties agreed to extend the deadline for the Final Pretrial Order by one (1) week.

8.     On November 14, 2022, Corporation Counsel sent an email stating, "we agree to settle for $2 million. I'll get started on the paperwork and will send it your way once its ready." Defendants failed to alert Plaintiffs that "the powers that be" were not the City Council and that they had not obtained approval from the City Council before agreeing to the settlement amount.

9.     Later that same day, despite having already agreed to the settlement, the City claimed it needed to know who the "takers" are before sending over the settlement paperwork.

10.     On November 23, 2022, Plaintiffs filed a Motion to Amend the Complaint and notified the Court that the parties had reached a settlement. (Dkt. 255).

11.     On December 16, 2022, Plaintiffs' police procedures expert, Dennis Waller, advised he has retired and is no longer accepting new cases. Plaintiffs' counsel advised Mr. Waller that the Cole-Garrit matter was settled. He sent his final invoice and shredded the file.

12.     On December 28, 2022, Plaintiffs filed an (amended) Motion to Amend the Complaint to: (1) remove one of the named minor children; (2) remove the dismissed defendants; and (3) remove the dismissed counts. (Dkt. 257).

13. On December 28, 2022, Corporation Counsel advised they would begin working on the settlement documents, despite having already advised to be working on these documents a month and a half earlier.

14. On December 30, 2022, the Court granted the Motion to amend the Complaint. (Dkt. 259).

15. On January 4, 2023, the Amended Complaint was filed. (Dkt. 260).

16. On January 4, 2023, a Qualified Settlement Fund (QSF) was established for Darius Cole-Garrit's two minor children where the settlement funds would be deposited.

17. On January 17, 2023, Plaintiffs' counsel followed up regarding the settlement documents.

18. On January 17, 2023, Corporation Counsel again took the legally untenable position that the probate proceedings needed to be completed before settlement documents would be provided.

19. That day, January 17, 2023, based on the conditions set forth by Corporation Counsel, Plaintiffs, with assistance from Plaintiffs' counsel, retained Mr. William Hardesty, Esq. from the Law Office of Theresa A. Berkey to represent the Estate of Darius Cole-Garrit in the probate proceedings

20. On January 27, 2023 and March 3, 2023, per the Court's request for a status update, the Parties again notified the Court that a settlement was reached. Additionally, the Court was notified that the Estate of Darius Cole-Garrit had retained separate counsel for the probate proceedings. (Dkt. No. 264 and 266).

21. On April 13, 2023, an Order Declaring Heirship was entered in the probate proceedings.

3

22.     On April 28, 2023, the Parties notified the Court that an Order of Heirship was obtained in the probate proceedings.

23.     On May 19, 2023, more than six (6) months after the parties reached an agreement to settle this case, Defendants tendered a release and demanded that Plaintiffs enter into a stipulation to dismiss even though they had not consulted the City Council and had not even sought a preliminary or advisory opinion on settlement. This was the first time that Plaintiffs were ever notified that the City Council had not been consulted and had not approved the settlement.

24.     On May 29, 2023, the Parties notified the Court that the heirs of Darius Cole-Garrit have been finalized in the probate proceeding and that the parties were working on the settlement documents. (Dkt. 271).

25.     On June 12, 2023, Plaintiffs tendered a fully executed release to Corporation Counsel.

26.     On June 14, 2023, the Parties entered a stipulation of dismissal. (Dkt. 272). The Court entered the stipulation that same day. (Dkt. 273).

27.     On June 28, 2023, Plaintiffs filed a Motion to Approve Attorney's Fees and Costs. (Dkt. 274).

28.     On June 30, 2023, the Court approved Plaintiffs' counsel's fees and costs. (Dkt. 275).

29.     On July 17, 2023, City Council's Finance Committee voted 10-9 to endorse the settlement.

30.      On July 19, 2023, the settlement was presented to City Council.

31.     Prior to the vote, Alderman Bill Conway of the 34th Ward objected to the settlement. He bolstered his objection citing to his training and experience as a former Assistant State's Attorney. He relied on very early media reports which inaccurately reported the shooting. He went on to recite a one-sided version of events and ignored conflicting evidence. Allegedly with Corporation Counsel's approval, he cited to Mr. Cole-Garrit's autopsy report, publicly speculating that Mr. Cole-Garrit must have been facing the officers while pointing a gun at them at the time he was shot. He further supported his objection to the settlement with IPRA's finding that cleared the officers. IPRA was dismantled by former Mayor Emmanuel stating, "IPRA has not served the people of the City well for many years – creating an absence of accountability for police misconduct."

32.     Immediately following Alderman Bill Conway's public comments, and despite endorsement of the settlement by the Finance Committee, City Council denied the motion to approve the settlement, twenty-two (22) yeas to twenty-six (26) nays.

**<u>Argument</u>**

This Honorable Court should enforce the settlement agreement because Defendants induced reliance on said agreement, which resulted in Plaintiffs taking a series of actions that materially and irreparably prejudiced Plaintiffs' case. Defendants should be estopped from withdrawing from the settlement agreement or denying its existence, notwithstanding approval from City Council, because:

1. Defendants led Plaintiffs to believe that they had approval of the City Council or the appropriate authority to approve the settlement.

2. Defendants never expressly notified Plaintiffs that Defendants did not have legal authority to enter into a settlement agreement.

5

3. Plaintiffs, in good faith reliance on Defendants' express statements and omissions, notified their police practices expert that he would no longer be needed. He subsequently retired and shredded the case file.

4. Defendants delayed seeking timely approval from the City Council by creating and imposing upon Plaintiffs unnecessary conditions that were all ultimately irrelevant to the City Council's decision to approve or disapprove the settlement, including requiring Plaintiffs to:

   a. open up probate proceedings and incur the cost of retaining probate counsel;

   b. seek an order of heirship so that Defendants know who the "takers" are; and

   c. require Plaintiffs to enter a stipulation to dismiss the case.

5. Defendants released case information subject to the protective order which allowed an Alderman to publicly and deliberately misstate the facts about critical and material issues in the case, including false information about the gun, the positioning of Mr. Cole Garrit's body when he was shot, and absolutely ignoring the fact that the same ununiformed officers threatened Mr. Cole-Garrit with harm a few hours before they charged at him in an unmarked SUV, without verbally identifying themselves as police, ran over Mr. Cole Garrit's bicycle and the curb where he was standing, then jumped out of their vehicle and began shooting. The Alderman, who relied on his alleged experience as a former ASA to analyze the facts and argue against the settlement, omitted facts that any good prosecutor would have identified as a planned and deliberate assassination.

6. Defendants, through deliberate actions, neglect, or indifference, provided a third-party information subject to the protective order which was then used by that third party to damage Plaintiffs' case and advance Defendants' case. The Alderman's statements

bolstered by his claim that he was an experienced ASA are recorded and are very easy to access by a simple internet search. The prejudice from that illegal release of information is palpable and will be very difficult to ameliorate.

More than eight (8) months after reaching a settlement with Defendants, in an unexpected and unprecedented move, on July 19, 2023, the City Council rejected the settlement, even after City Council's Finance Committee voted 10-9 to endorse the settlement on July 17, 2023, just two days earlier. Within those eight months, the Estate of Darius Cole-Garrit: (1) retained counsel to handle probate proceedings, (2) drafted and filed documents in probate court, (3) obtained an heirship order, (4) lost its police procedures expert, (5) opened a Qualified Settlement Fund on behalf of the Estate, (6) calculated and drafted a motion to have Plaintiff's attorney's fees approved, and (7) dismissed this case. The actions were undertaken in good faith reliance on Defendants' representations, omissions, and advisement that "the powers that be" had approved the settlement. Plaintiffs will be severely prejudiced if the settlement agreement is not enforced and if Defendants are allowed to claim that a valid settlement agreement does not exist. This Court should estop Defendants from denying the validity of that agreement and enter an Order enforcing the settlement agreement reached over eight (8) months ago.

The doctrine of estoppel is applicable to municipal corporations. *Kenny Const. Co. v. Metro. Sanitary Dist. of Greater Chicago*, 52 Ill. 2d 187, 197 (1971) (citing *Gregory v. City of Wheaton*, 23 Ill.2d 402 (1961); see also *Cities Service Oil Co. v. City of Des Plaines*, 21 Ill.2d 157 (1961). Although "[t]he general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him, … [t]he general rule is qualified…to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would

be permitted to stultify itself by retracting what its agents had done." *Cities Serv. Oil Co. v. City of Des Plaines*, 21 Ill. 2d 157, 160–61 (1961).

In *People ex rel. Beardsley v. City of Rock Island*, the rule was expressed as follows: "Where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied." 215 Ill. 488 (1905). "But before the doctrine can be invoked there must have been some positive acts by the municipal officers which may have induced the action of the adverse party. Mere nonaction is not enough." *Gregory v. City of Wheaton*, 23 Ill. 2d 402, 407–08 (1961). Whether the doctrine of estoppel may be applied against a municipal corporation in a given case will be determined from a consideration of all the circumstances of the case. If under all of the circumstances, the affirmative acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, the doctrine of estoppel may be applied against it. *Stahelin v. Bd. of Ed., Sch. Dist. No. 4, DuPage Cnty.*, 87 Ill. App. 2d 28, 39 (Ill. App. Ct. 1967).

This rule applies here. When the settlement was reached, the City's agent stated, "we agree to settle for $2 million. I'll get started on the paperwork and will send it your way once its ready." There was a meeting of minds that a settlement was reached for 2 million dollars. There was no mention at that time that "the powers that be" were not the approving authority. Defendants led Plaintiffs to believe that authority had been obtained and never expressly stated otherwise until the settlement agreement was finally provided six months after agreement to settle had been reached. By that point, Plaintiffs were powerless to take any action. Plaintiffs acted in good faith in finalizing the settlement agreement and took several additional, and

unnecessary, steps – that were induced by Defendants – because Plaintiffs were led to believe that Defendants' counsel had obtained necessary authority to settle.

In *Cities Serv. Oil Co.*, for example, the Court noted that Plaintiff had expended large sums of money in reliance upon the permit and the apparent acquiescence by the city officials. 21 Ill. 2d at 162–63. Further, the Court noted, "[a]lthough a comprehensive city plan was investigated and adopted in the interim, the permit in question remained outstanding for seven months before the mayor revoked it. Under these circumstances it would be highly unjust to enforce the public right and compel the plaintiff to suffer a substantial loss." *Id*. at 163.

Similarly, in this case, Plaintiff has expended costs to retain a probate attorney, expended numerous hours drafting and filing documents within the probate proceedings, opened a Qualified Settlement Fund (QSF) account for the benefit of Mr. Cole-Garrit's minor children, dismissed this case, informed their police practices expert who was retiring that the case settled, and obtained a Court order approving attorney's fees and costs all based on reliance on Defendants' acceptance of Plaintiffs' demand.

Eight months after a settlement was reached on November 14, 2022, Defendants finally managed to get the matter before the City Council. In those eight months, Plaintiffs incurred significant costs to their detriment and undertook a series of actions in reliance on Defendants' representations, some of which prejudice Plaintiffs' case. In particular,  the loss of Plaintiffs' police practices expert severely prejudices Plaintiffs' case. The remedy to the loss of Plaintiffs' expert will result in significant cost and the loss of even more time before this case can be trial ready again. Further expense and delay is fundamentally unfair. That, along with Alderman Conway's irresponsible statements about the facts of this case, demands that the Defendants be estopped from withdrawing from the settlement. Similar to *Cities Service Oil*, under the

circumstances of this case, it would be "highly unjust to enforce the public right and compel the plaintiff to suffer a substantial loss." *Id*.

If this motion were to be denied, Plaintiffs will have to search for a new police procedures expert and to incur significant new costs so that the new expert can become familiar with the facts and the discovery in the case. Defendants will, of course, want to depose the new expert. Defendant's expert, as he previously has done, will attempt to rebut Plaintiffs' new expert. Plaintiffs will then need to depose Defendants' expert again on these issues. This will likely trigger additional motions practice as Defendants' expert was already the subject of extensive *Daubert* briefings. The time to complete this new work will consume a large amount of time that will further delay trial. Additionally, Alderman Conway's statements regarding the shooting has ***publicly*** put Plaintiffs in an unfair and negative light giving Defendants an unfair advantage. Specifically, the statements by Alderman Conway where he concluded, based on his review of the case and his experience as an attorney and former State's Attorney, that Mr. Cole-Garrit was shot while pointing a gun and facing the Defendant Officers. A statement that is not reasonably supported by the evidence in this case. A statement that ignored conflicting evidence. The gun in question was undisputedly recovered about 15-20 feet away from Mr. Cole-Garrit's body.

Additionally, zero fingerprint evidence and zero DNA evidence link the gun to Mr. Cole-Garrit. Nonetheless, Alderman Conway's public, one-sided statements ignored evidence adverse to Defendants and his statements are likely to influence the jury pool, as it did to his fellow Council members. If this motion were denied, justice, fairness, and the Federal Rules of Civil Procedure would require re-opening discovery to allow Plaintiffs to not only retain a new police procedures expert to replace the retired Mr. Waller, but to also retain a scene reconstructionist to

dispute Alderman Conway's statements that Mr. Cole-Garrit was shot and killed while pointing a gun and facing Defendant Officers.

**Conclusion**

WHEREFORE, the Plaintiff respectfully request that this Court enter an Order enforcing the settlement agreement between the Parties.

Respectfully Submitted:

*/s Matthew Amarin*
Matthew Amarin
LAW OFFICES OF HAYTHAM FARAJ
1935 W. Belmont Ave.
Chicago, IL 60657
312-635-0800
Matthew@farajlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SUSIE GARRIT, as administrator of the estate of DARIUS COLE-GARRIT; UNIQUE HATCHET, on behalf of her minor child; and FALICIA LEWIS, on behalf of her minor child, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, an Illinois Municipal Corporation; Officer Matthew O'BRIEN, #10634; Officer James BANSLEY, #10927; <br><br> Defendants. | Case No.: 16-cv-7319 <br><br> JURY TRIAL DEMANDED |

## ATTORNEY DECLARATION

I, Matthew Amarin, hereby provide the following information under the penalty of perjury and will competently testify to such if called to testify.

1. I am one Plaintiffs' attorneys in the above-captioned manner.

2. In July 2022, while the parties were preparing the Final Pretrial Order, Defendants, through Corporation Counsel, offered $750,000 to settle this case.

3. Plaintiffs rejected Defendants' offer.

4. On October 14, 2022, Plaintiffs made a demand to settle this case for $3,000,000.

5. On November 7, 2022, seven (7) days before the Final Pretrial Order was due, Defendants offered $1,800,000 to settle the case.

12

6. On November 8, 2022, in light of Defendants' offer to settle and DNA results confirming Cole-Garrit left behind two minor heirs (rather than three), Plaintiffs reduced their demand from $3,000,000 to $2,000,000 ($1,000,000 per minor heir).

7. The same day, Counsel for Defendants advised that a memo was drafted and sent to "the powers that be."

8. On November 10, 2022, four (4) days before the Final Pretrial Order was due, Defendants were still waiting to hear back from their "front office" regarding settlement. Accordingly, the parties agreed to extend the deadline for the Final Pretrial Order by one (1) week.

9. On November 14, 2022, Corporation Counsel sent an email stating, "we agree to settle for $2 million. I'll get started on the paperwork and will send it your way once its ready." Defendants failed to alert Plaintiffs that "the powers that be" were not the City Council and that they had not obtained approval from the City Council before agreeing to the settlement amount.

10. Later that same day, despite having already agreed to the settlement, the City claimed it needed to know who the "takers" are before sending over the settlement paperwork.

11. On November 23, 2022, Plaintiffs filed a Motion to Amend the Complaint and notified the Court that the parties had reached a settlement. (Dkt. 255).

12. On December 16, 2022, Plaintiffs' police procedures expert, Dennis Waller, advised he has retired and is no longer accepting new cases. Plaintiffs' counsel advised Mr. Waller that the Cole-Garrit matter was settled. He sent his final invoice and shredded the file.

13. On December 28, 2022, Plaintiffs filed an (amended) Motion to Amend the Complaint to: (1) remove one of the named minor children; (2) remove the dismissed defendants; and (3) remove the dismissed counts. (Dkt. 257).

14.     On December 28, 2022, Corporation Counsel advised they would begin working on the settlement documents, despite having already advised to be working on these documents a month and a half earlier.

15.     On December 30, 2022, the Court granted the Motion to amend the Complaint. (Dkt. 259).

16.     On January 4, 2023, the Amended Complaint was filed. (Dkt. 260).

17.     On January 4, 2023, a Qualified Settlement Fund (QSF) was established for Darius Cole-Garrit's two minor children where the settlement funds would be deposited.

18.     On January 17, 2023, Plaintiffs' counsel followed up regarding the settlement documents.

19.     On January 17, 2023, Corporation Counsel again took the legally untenable position that the probate proceedings needed to be completed before settlement documents would be provided.

20.     That day, January 17, 2023, based on the conditions set forth by Corporation Counsel, Plaintiffs, with assistance from Plaintiffs' counsel, retained Mr. William Hardesty, Esq. from the Law Office of Theresa A. Berkey to represent the Estate of Darius Cole-Garrit in the probate proceedings

21.     On January 27, 2023 and March 3, 2023, per the Court's request for a status update, the Parties again notified the Court that a settlement was reached. Additionally, the Court was notified that the Estate of Darius Cole-Garrit had retained separate counsel for the probate proceedings. (Dkt. No. 264 and 266).

22.     On April 13, 2023, an Order Declaring Heirship was entered in the probate proceedings.

23.     On April 28, 2023, the Parties notified the Court that an Order of Heirship was obtained in the probate proceedings.

24.     On May 19, 2023, more than six (6) months after the parties reached an agreement to settle this case, Defendants tendered a release and demanded that Plaintiffs enter into a stipulation to dismiss even though they had not consulted the City Council and had not even sought a preliminary or advisory opinion on settlement. This was the first time that Plaintiffs were ever notified that the City Council had not been consulted and had not approved the settlement.

25.     On May 29, 2023, the Parties notified the Court that the heirs of Darius Cole-Garrit have been finalized in the probate proceeding and that the parties were working on the settlement documents. (Dkt. 271).

26.     On June 12, 2023, Plaintiffs tendered a fully executed release to Corporation Counsel.

27.     On June 14, 2023, the Parties entered a stipulation of dismissal. (Dkt. 272). The Court entered the stipulation that same day. (Dkt. 273).

28.     On June 28, 2023, Plaintiffs filed a Motion to Approve Attorney's Fees and Costs. (Dkt. 274).

29.     On June 30, 2023, the Court approved Plaintiffs' counsel's fees and costs. (Dkt. 275).

30.     On July 17, 2023, City Council's Finance Committee voted 10-9 to endorse the settlement.

31.      On July 19, 2023, the settlement was presented to City Council.

32.     Prior to the vote, Alderman Bill Conway of the 34th Ward objected to the settlement. He bolstered his objection citing to his training and experience as a former Assistant State's Attorney. He relied on very early media reports which inaccurately reported the shooting. He went on to recite a one-sided version of events and ignored conflicting evidence. Allegedly with Corporation Counsel's approval, he cited to Mr. Cole-Garrit's autopsy report, publicly speculating that Mr. Cole-Garrit must have been facing the officers while pointing a gun at them at the time he was shot. He further supported his objection to the settlement with IPRA's finding that cleared the officers. IPRA was dismantled by former Mayor Emmanuel stating, "IPRA has not served the people of the City well for many years – creating an absence of accountability for police misconduct."

33.     Immediately following Alderman Bill Conway's public comments, and despite endorsement of the settlement by the Finance Committee, City Council denied the motion to approve the settlement, twenty-two (22) yeas to twenty-six (26) nays.

Dated: August 1, 2023                                            */s/ Matthew Amarin*